UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALECK SIMONIA, et al., | No. CV 07-08090-VBK |
| Plaintiffs, | DECISION AND JUDGMENT |
| v. | (COURT TRIAL) |
| THE HARTFORD INSURANCE COMPANY, et al., | |
| Defendants. | |

**I**

**INTRODUCTION**

On December 12, 2007, Plaintiff Aleck Simonia ("Simonia") filed suit against Glendale Nissan/Infiniti Disability Plan, an ERISA ("Plan"), and the Hartford Insurance Company ("Hartford") (collectively, "Defendants").[1]

This is an ERISA[2] action for long-term disability ("LTD") benefits pursuant to a benefit plan established by Stewart's employer, Glendale Nissan/Infiniti ("Glendale"). The Plan was funded by a group

---

[1] A counterclaim filed by Defendants has, by stipulation, been dismissed without prejudice.

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, et seq.

disability insurance policy purchased effective July 1, 2001 by Glendale from Continental Casualty Company ("Continental"). In 2003, Hartford Life and Accident Insurance Company purchased 100 percent of the issued and outstanding stock of Continental. In that same year, Continental's name was changed to Hartford Life Group Insurance Company. In 2006, Hartford Life Group Insurance Company merged with Hartford Life and Accident Insurance Company, and Hartford Life and Accident Insurance Company became the surviving entity.[3]

Hartford administered Glendale's employees' claims under the terms of the Continental policy.

Simonia alleges that Hartford improperly denied his claim for LTD benefits under the Plan.

A bench trial was held on January 13, 2009. The matter was heard on trial briefs submitted by both parties, and, following the court trial, Simonia (at the Court's request) submitted several unreported cases which had been cited in Simonia's briefs. The Court has reviewed the administrative record ("AR") and considered the arguments and evidence. Based on the evidence, and reasonable inferences drawn therefrom, the Court finds in favor of Defendants.

**II**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This opinion constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact which constitutes a conclusion of law is adopted as

---

[3] Hartford Life and Accident Insurance Company was improperly sued by Plaintiff as "The Hartford Insurance Company." (See Answer to Complaint.) The Court will reference the Defendant and Counterclaimant as "Hartford."

such, and the converse will also be true.

    **A.**    **Findings of Fact**.

        1.    Simonia was employed by Glendale in the capacity of an auto repair technician. He sustained a physical injury on February 28, 2003 and was diagnosed with left inguinal hernia and lumbosacral sprain.

        2.    In June 2003, Simonia submitted a short-term/long-term disability claim form along with an Attending Physician's Statement ("APS") by an orthopedic surgeon, Dr. Hekmat. Simonia claimed that he had been disabled from work since April 8, 2003 by virtue of a herniated lumbar disk. (AR 584-588.) His physician estimated he could return to work as of July 31, 2003. (AR 587.) Continental approved Simonia's claim for short-term disability benefits. (AR 581-582.)

        3.    Simonia's job required that he stand five hours each day, three hours at a time, walk for two hours a day, one hour at a time, and sit for one hour a day. The job also required strenuous pushing and pulling, lifting and carrying. (AR 585-586.)

        4.    Medical records indicate disk protrusions at L3-4, L4-5, and L5-6. (AR 545-546.) Simonia's physician, Dr. Hekmat, diagnosed that he had a herniated lumbar disk and found him to be totally temporarily disabled. (AR 521-526.) Simonia underwent three epidural injections and Dr. Hekmat opined that he was unable to return to work. (AR 461.) His claim was extended at that point

|   |   |   |
|---|---|---|
| 1 |    | through October 31, 2003. (AR 456.) |
| 2 | 5. | Continental received a November 12, 2003 report from Dr. Hekmat. (AR 407-410.) Thereafter, Continental extended Simonia's benefits through December 31, 2003. (AR 349, 44-45.) At this time, the policy obligations were assumed by Hartford which administered the claim after December 31, 2003. (See, infra.) |
| 8 | 6. | On March 17, 2004, Dr. Hekmat found that Simonia was Permanent and Stationary, and released him to return to semi-sedentary work until he had hernia surgeries. (AR 376-381.) |
| 12 | 7. | On April 9, 2004, the aforementioned report by Dr. Hekmat was reviewed by Hartford which found that Simonia was unable to perform his own occupation as an auto mechanic, deemed a heavy occupation, until he had the recommended surgeries. His benefits were extended through June 30, 2004. In February 2005, Hartford requested a Functional Assessment Evaluation from Dr. Hekmat, and in response, Dr. Hekmat sent Hartford a copy of his March 17, 2004 Permanent and Stationary report indicating that he had discharged Simonia from his care on that date. (AR 357-361.) |
| 23 | 8. | Under the Plan, long-term disability insurance benefits for eligible employees are available in an amount selected by the employee subject to a 60 percent of salary maximum. Simonia selected an LTD monthly benefit of $2,000. (AR 590-591.) This benefit is subject to offsets by other income of benefits in |

|   |   |   |
|---|---|---|
| 1 |    | excess of 60 percent from all sources. Further, |
| 2 |    | following a 90-day Elimination Period, benefits are |
| 3 |    | payable through the Social Security Normal Retirement |
| 4 |    | Age ("SSNRA"), which, in Simonia's case, is sixty-six. |
| 5 |    | (AR 603-604.) |
| 6 | 9. | Under the Plan, disability is defined under an "own |
| 7 |    | occupation" definition for three years, and thereafter |
| 8 |    | an "any occupation" definition. (AR 606.) (The entire |
| 9 |    | Plan is found at AR 601-621.)  The policy provides an |
| 10 |    | exclusion for disability beyond 12 months after the |
| 11 |    | Elimination Period "if it is due to a Mental Disorder |
| 12 |    | of any type." (AR 610.)  A "mental disorder" is |
| 13 |    | thereafter defined in the policy as "a disorder found |
| 14 |    | in the current diagnostic standards manual of the |
| 15 |    | American Psychiatric Association." (AR 617.) |
| 16 | 10. | With regard to decision-making, the policy provides |
| 17 |    | that, "<u>We</u> have discretionary authority to determine |
| 18 |    | <u>Your</u> eligibility for benefits and to interpret the |
| 19 |    | terms and provisions of the policy." (AR 601, emphasis |
| 20 |    | in original.) |
| 21 | 11. | Because the three-year "regular occupation" period was |
| 22 |    | about to expire and therefore change to an "any |
| 23 |    | occupation" standard, Hartford conducted an |
| 24 |    | occupational analysis. Simonia was advised that the |
| 25 |    | "own occupation" period would be expiring on July 7, |
| 26 |    | 2006. (AR 31, 318-344.) Simonia informed Hartford on |
| 27 |    | January 22, 2006 that he had not seen Dr. Hekmat since |
| 28 |    | 2004. (AR 22.) Simonia's claim was approved through |

|   |   |   |
|---|---|---|
| | | July 7, 2006. |
| | 12. | In early April of 2006, Simonia advised that he had become severely depressed and suffered from poor concentration, lack of interest and mood changes. He identified his physician as Dr. Alexanian, a psychiatrist, along with Dr. Hekmat, whom he had not seen since 2004. (AR 288-296.) |
| | 13. | Based on a Functional Assessment Tool, Dr. Hekmat indicated that Simonia was able to do semi-sedentary work. (AR 277-278.) Dr. Hekmat precluded Simonia from any work activity requiring heavy lifting, repetitive bending, pulling, pushing or prolonged standing. (AR 279-283.) |
| | 14. | Hartford referred the matter for vocational review to determine whether Simonia retained the physical capacity to perform the duties of any occupation. (AR 19.) A Vocational Rehabilitation Coordinator provided a June 29, 2006 report which reviewed occupations in the area of sedentary and light physical demand requirements. Simonia was found to have several transferable skills, and five positions were identified, three involving light exertional demands, and two sedentary positions. The targeted salary assessment was $20.70 per hour, but the wages for these positions fell below that. (AR 265-272.) Hartford then concluded as to the alternative occupations that a gainful level of compensation had not been identified, and benefits were continued. (AR 18-19, 260-261.) |

15. In a Claimant Questionnaire dated February 13, 2007, Simonia identified his medical conditions as back pain and depression, and his treating physician as Dr. Alexanian. (AR 253-256.)

16. Hartford reviewed Dr. Alexanian's records which covered five visits during the period of March 20, 2006 through February 17, 2007. The documents reflect that Simonia was treated for severe depression, helplessness, severe anxiety, low energy and inability to concentrate. (AR 216-222.)

17. A behavioral (mental) health case assessment was conducted on April 13, 2007, resulting in a note that additional clinical information was needed to determine whether there was an impairment due to a mental condition. (AR 12-13.) The evaluator spoke with Simonia (AR 11-12), and thereafter performed a Final Functional Assessment on April 17, 2007. Therein, it was concluded that Simonia was functionally impaired from duties requiring an ability to focus/concentrate, to complete required tasks, and work under specific instructions. Thus, there were limitations and restrictions assessed due a mental condition, and the evaluator found the diagnosis of major depressive disorder, recurrent, severe, to be supported. (AR 10-11.)

18. Hartford evaluated Simonia's potential continued eligibility for benefits due to physical condition on April 19, 2007. Hartford conducted a vocational

          analysis which included a transferable skills review that identified a number of occupations Simonia could perform. These involved sedentary to light unskilled and semi-skilled occupations with hourly salaries ranging from $22 to $28. (AR 8-9, 223-244.)

19. On April 24, 2007, Simonia informed Hartford that he had been approved for Social Security disability income ("SSDI") and that he was considered disabled under the rules of the Social Security Administration ("SSA") as of April 16, 2004. Simonia indicated he was awarded SSI per month (AR 212-215.) Based on offset provisions in the policy which included SSDI, Hartford recalculated benefits and indicated there had been an overpayment of $22,309.51. (AR 162-166.)[4]

20. Hartford determined that Simonia was no longer disabled physically as of April 19, 2007, but approved him for mental disability effective April 20, 2007. Thus, the benefits for mental illness would be payable for 12 months, until April 19, 2008. (AR 06.)

21. Hartford also advised Simonia that he was no longer disabled due to a physical condition under the "any occupation" standard. Therefore, Hartford terminated Simonia's LTD benefits as of April 19, 2007. (AR 157-161.)

---

[4] At trial, the Court ordered the parties to confer after the conclusion of the proceedings, to attempt to resolve their dispute concerning the alleged overpayment. The parties have filed a Joint Status Report indicating that this issue has been resolved, and is not an impediment to entry of judgment.

1       22.   Simonia appealed through his counsel on July 9, 2007. (AR 66-67.) Hartford responded by denying the appeal. (AR 64-65.) Thereafter, Simonia's lawyer informed Hartford on August 8, 2007 that Simonia's disabling mental condition was the result of his physical problems and that the 12-month mental illness limitation was therefore inapplicable. Simonia's counsel enclosed a note from Dr. Alexanian which indicated that "Mr. Simonia's depression is caused by work-related trauma and severe physiological hardship he had because of it." (AR 62.)

23.   On November 28, 2007, Hartford upheld the decision denying LTD benefits.

**B.   Conclusions of Law**.

Simonia challenges Hartford's denial of LTD benefits.

    **1.   Jurisdiction**.

The Court has jurisdiction over this ERISA matter pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

    **2.   Standard of Review**.

A denial of benefits under an ERISA plan will be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When discretion is conferred by the benefits plan, "the exercise of that discretion is reviewed under the

9

arbitrary or capricious standard, or for abuse of discretion, which comes to the same thing." Snow v. Standard Ins. Co., 87 F.3d 327 (9th Cir. 1996)(citing Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1321 & n.1 (9th Cir. 1995)).

      **a.**    **The Appropriate Standard of Review Is Abuse of Discretion.**

The plan unambiguously grants Continental discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy. (AR 601.)  The abuse of discretion standard would thus be applicable.  Simonia asserts, however, that although Continental had discretion over the plan, Hartford does not.  The Court disagrees.

      **i.**    **Hartford Acquired Continental's Fiduciary Obligations.**

Simonia argues that while the plan may give full discretion to Continental to make findings of fact and to interpret its terms, this discretion is not given to Hartford.  There is no dispute that Hartford made all of the factual findings and interpretations of the Plan in this case.  Simonia argues that the Court should review the termination of the LTD benefits on a de novo basis.  As set forth in Simonia's briefs, and as his counsel argued at trial, Continental cannot delegate its fiduciary duties under the ERISA statute.[5]  Simonia

---

[5] 29 U.S.C. §1105(c)(1) provides:
"The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee
(continued...)

10

argues that the benefits decision was carried out by Hartford, which was not authorized under the Plan provisions to perform such fiduciary tasks.

As the Court has summarized, Hartford purchased Continental's stock in 2003, and in 2006, Hartford became the sole surviving entity. (See Soler Declaration.) The Court disagrees with Simonia's position in large part because it relies upon the premise that Continental cannot <u>delegate</u> its fiduciary obligations to any other party, including Hartford, pursuant to the Plan. That is a correct reading of the policy, and indeed, Simonia has cited a series of cases which support his position. The difficulty is that those cases involve situations in which the fiduciary improperly delegated its authority in the absence of enabling language in the applicable policies. (See, e.g., Plaintiff's citation to <u>McKeehan v. Signa</u>, 344 F.3d 789, 792-793 (8th Cir. 2003).) This case, however, does not implicate delegation by the fiduciary; rather, the fiduciary here was acquired <u>in</u> <u>toto</u> by Hartford. This case is on all fours with <u>Giannone v. Metropolitan Life Insurance Co.</u>, 311 F.Supp.2d 168 (D. Mass. 2004), in which the Court concluded that "when Met Life, pursuant to a Court-ordered liquidation, acquired all of the assets and liabilities of Gen Am, it stepped into Gen Am's shoes, and in so doing acquired all of the powers conferred by the Plan on Gen Am, including the discretionary authority to make benefits decisions." (<u>Id</u>. at 175.) (<u>See</u> <u>also</u> <u>Stewart v. Continental Casualty Co.</u>, No. CV-08-919-RGK (SSx), Central District

---

$^{5}$(...continued)
responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than the named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan."

of California, December 13, 2006. ["Upon assumption of this business, Hartford stepped into the shoes of CNA and assumed the rights and obligations attached to its business ... included among the assumed rights and obligations are CNA's fiduciary obligations created by the discretionary authority to determine eligibility of benefits ... Therefore, when Hartford purchased the insurance contract from CNA, discretionary authority transferred from CNA to Hartford."].) The Court finds the reasoning of these cases persuasive, and concludes that the prohibition on unauthorized delegation of fiduciary authority is, in this instance, inapplicable.

    3.    **Discussion**.

With regard to physical disability, Simonia conceded in his Trial Brief that,

> "Simonia has physical conditions that all agree limit him to semi-sedentary work with no heavy lifting, repetitive bending, pulling, pushing and prolonged periods of standing."

(Brief at 7.)

In his Reply Brief, however, Simonia shifted his argument and contended that, for several reasons, he remains physically disabled. First, Simonia argued that the policy requires that he be able to earn at least 80 percent of his pre-disability earnings from a new job. Next, Simonia noted that when Hartford hired a vocational counselor in 2006, it was unable to find a job which would pay Simonia 60 percent of his pre-disability earnings. With regard to the 2007 employability analysis, Simonia argued that because the "identify and qualification

[of the author] are unknown," a decision based on such an opinion is arbitrary and capricious. The Court rejects each of these arguments. First, Simonia misinterprets the Earnings Qualifier portion of the policy, which in fact does not set an 80 percent of pre-disability earnings standard. Rather, under the Earnings Qualifier, for a claimant who is gainfully employed, disability is defined as an injury or sickness causing an impairment to such a degree that the individual is unable to earn more than 80 percent of his pre-disability monthly earnings. The Earnings Qualifier only applies when the individual is working. The Occupation Qualifier applies for non-working individuals, and provides that under the "any occupation" standard, the individual must be continuously unable to engage in any occupation and is not working for wages in any occupation for which he is qualified.

Next, the occupations identified in the 2007 review meet the target salary identified in the 2006 vocational review. (AR 276, 224.) Moreover, the 2007 review was conducted by a "Rehabilitation Case Manager." (AR 124.) Simonia's argument that the conclusions are arbitrary and capricious because there is no name attached is unsupported by any authority, and is unmeritorious.

With regard to mental impairment, Simonia's argument is that based on Dr. Alexanian's letter, it is undisputed that Simonia's mental disorder has a physical cause, and therefore, the 12-month limitation period for mental disorders is inapplicable. Simonia's citation to Patterson v. Hughes Aircraft Co., 11 F.3d 948 (9th Cir. 1993) does not support his argument, because the policy at issue in Patterson contained an ambiguous definition of mental disorder. The present policy does not. Further, because the Court finds no

ambiguity in the definition, Simonia's argument that the Court should apply a contra proferentem analysis is, again, without support. Here, Simonia has a diagnosed mental disorder which the parties do not dispute comes within the parameters of the diagnostic definition set forth in the policy. Simonia's argument that he could not have been expected to read the diagnostic manual is unavailing. The definition in the policy is entirely clear and unambiguous. This makes Simonia's argument, that the 12-month period is inapplicable based on the asserted physical cause of his mental disorder, to be essentially irrelevant. Indeed, even if the Court had adopted a de novo standard of review, the conclusion would be the same. Because there is no ambiguity in the definition of mental disorder, the 12-month limitation would apply.

In light of the foregoing, the Court finds that Hartford did not abuse its discretion by denying Simonia's claim for LTD benefits.

**JUDGMENT**

For the foregoing reasons, the Court **HEREBY ENTERS JUDGMENT** in favor of Defendants.

DATED: March 24, 2009          /s/
                               VICTOR B. KENTON
                               UNITED STATES MAGISTRATE JUDGE